**Connie Lynn Tye WHEELER, Plaintiff–Appellee,**

v.

**The SOUTHLAND CORPORATION, Defendant–Appellant.**

No. 88–3668.

United States Court of Appeals, Sixth Circuit.

Argued March 20, 1989.

Decided June 5, 1989.

Rehearing and Rehearing En Banc Denied July 19, 1989.

Alphonse A. Gerhardstein (argued), Roger R. Chacksfield, Chacksfield & Cooper, Cincinnati, Ohio, for Connie Lynn Tye Wheeler.

James E. Davidson (argued), James M. L. Ferber, Schottenstein, Zox & Dunn, Columbus, Ohio, for Southland Corp.

Before MERRITT and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant The Southland Corporation (Southland) appeals from the judgment of the district court awarding plaintiff Connie Lynn Tye Wheeler back pay on her constructive discharge claim based on sexual harassment in this suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* For the following reasons, we affirm the judgment of the district court.

## I.

Southland is a national corporation which operates convenience stores under the trade name 7–11.

Wheeler was hired by Southland as a part-time clerk in June of 1979. In July of 1981, she became a certified store manager [1] of a newly opened store near the University of Cincinnati. Anthony Abbattista was an area supervisor for Southland from February of 1979 to August of 1983, when he was fired for touching a female receptionist. Harry Schmidt was a management trainee who was being trained to replace Abbattista. Schmidt was assigned to Wheeler's store.

In January of 1982, Abbattista became area supervisor over the area including Wheeler's store. In this capacity, Abbattista visited Wheeler's store several times a week. Each time he visited the store, he would lean against her, touch her hips, and call her "honey" or "baby". In early April of 1982, Abbattista invited Wheeler to a bar for a drink. Wheeler rebuffed his advances. On his next visit to the store, Abbattista was curt and critical of Wheeler's conduct as manager. He gave her a performance notice when he left the store. He was critical of the people she hired, and asked her why she did not hire women with large breasts.

On April 29, 1982, Abbittista wrote Wheeler and advised her that she had not met the certification criteria for January, February and March, and requested that she appear before a Certification Review Board. On June 3, 1982, Wheeler appeared

---

1. Southland has two classifications of managers: regular and certified. Both classifications have essentially the same duties. Certified managers, however, are eligible for a bonus of three percent of gross store profit. To become certified, a manager must meet goals relating to store sales, labor usage, store inspections, theft control, and human resource management.

before the Certification Review Board and presented a memorandum offering her explanation of the conditions in the store. Included in the memorandum were three pages describing sexual harassment and discrimination by Abbittista. After the meeting, the district manager told Wheeler that he did not know that Abbittista had been harassing her, although Wheeler claims that she sought to meet with the district manager about the harassment earlier that month. Wheeler was decertified the following day.

Southland conducted an investigation of Wheeler's harassment claim. The administrative assistant who investigated the claim felt the facts did not substantiate Wheeler's claim. The assistant placed weight on the fact that Wheeler had not come forward with the specifics of her claim until the decertification hearing.

On June 16, 1982, Schmidt was assigned to Wheeler's store. Wheeler allegedly told Schmidt of her problems with Abbattista. Schmidt told her to "hang in there" because he would be replacing Abbattista, though Wheeler disputes this. However, Schmidt did not specify when he would be replacing Abbattista.

In mid–June of 1982, Wheeler left work on sick leave for two weeks. She received a doctor's certificate to return to work on July 6th. She then took vacation time. During her vacation, she stopped at the store to pick up her paycheck and told Schmidt that she did not know if she could work for Abbattista. She never returned to work for Southland.

On November 15, 1985, Southland sold its Ohio 7–11 stores to United Dairy Farmers (UDF). At the time of the sale, certified store managers with five years' experience were offered the opportunity to remain with Southland. Also, UDF agreed to use its best efforts to retain Southland employees after the sale, and there was testimony below that Southland employees were retained by UDF.

On February 23, 1984, after exhausting her administrative remedies, Wheeler filed suit in district court under Title VII alleging that she was the victim of sexual harassment and that as a result of this harassment she was forced to resign. The parties consented to all proceedings, including final judgment, being determined by a United States Magistrate. *See* 28 U.S.C. § 636(c)(1). The case was assigned to Magistrate Robert A. Steinberg. The issues of liability and damages were bifurcated for trial. The liability phase was held from February 4th through the 7th of 1986. On July 23, 1986, the magistrate held that Wheeler had been sexually harassed, but that she had not made out a case of constructive discharge. The magistrate based his decision substantially on a finding that Wheeler knew that she would eventually be working for Schmidt and not Abbattista.

On January 20, 1987, Wheeler filed a memorandum on relief and also requested the court to reconsider its ruling on constructive discharge. Magistrate Steinberg unsuccessfully attempted to settle the case in the spring of 1987. On December 11, 1987, Magistrate Steinberg issued an opinion granting Wheeler's motion to reconsider and held that she had proven that she was constructively discharged. The major basis for the reversal on this issue was the magistrate's reversal of his finding that Wheeler knew that Abbattista would be replaced as her supervisor.

On January 8, 1988, Southland filed a motion to recuse and to vacate judgment. The motion was based on Magistrate Steinberg's participation in settlement negotiations and his reversal on the constructive discharge issue. On January 29, 1988, Magistrate Steinberg denied the motion to recuse and vacate, but transferred the case to Magistrate Aug for the damages phase of the proceedings. After a damages trial was held, Wheeler was awarded back pay for the period from her constructive discharge through the time of the damages trial. Southland timely appeals.

Southland raises three arguments on appeal: (a) it challenges the magistrate's holding that Wheeler had established a constructive discharge; (b) it challenges the award of back pay for the time period after it sold the 7–11 stores to UDF; and (c) it challenges the magistrate's order denying

its motion to recuse himself and vacate the December 11th opinion.[2]

## II.

This court has recently set forth the standards by which a plaintiff establishes a constructive discharge claim.

> A finding of constructive discharge in this circuit requires an inquiry into both the objective feelings of the employee and the intent of the employer.... This court has ... held that '[p]roof of discrimination alone is not a sufficient predicate for a finding of constructive discharge, there must be other aggravating factors.' We have also required some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee.... Thus it would appear that the courts have been trying to create a two pronged test whereby the feelings of the reasonable employee would not be enough to show discharge without at least some foreseeability on the part of the employer.

*Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987). In *Yates,* this court noted that the issue of constructive discharge is at least partially a question of law and therefore must be reviewed *de novo. Id.* at 636 (citing *Jacobs v. Martin Sweets Co.,* 550 F.2d 364, 370–71 (6th Cir.), *cert. denied,* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed. 2d 227 (1977)).

In this case, Southland does not challenge the finding that Wheeler was the victim of sexual harassment; rather, it argues that the court's finding of a constructive discharge was erroneous because it did not find that Southland intended to force Wheeler to resign and it did not find aggravating circumstances. In finding a constructive discharge in his second opinion, the magistrate stated that "[h]ad plaintiff left her position in May or June, she clearly would have been justified under the principles of constructive discharge. By July, circumstances had changed in that plaintiff was on leave and was advised by Schmidt that Abbattista might be transferred at an indefinite future time. These changes did not significantly affect the reasonableness of plaintiff's belief that she was compelled to resign or face continuing harassment."

## A.

This court has stated that "the constructive discharge issue depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982). This court has also endorsed the well recognized rule in labor relations that a man is held to intend the foreseeable consequences of his conduct. *Id.* Therefore, an employee can establish a constructive discharge claim by showing that a reasonable employer would have foreseen that a reasonable employee (or this employee, if facts peculiar to her are known) would feel constructively discharged.[3]

To establish her claim, Wheeler must show that a reasonable employer would have foreseen that she would resign, given the sexual harassment she faced. It is uncontested that Wheeler was the victim of sexual harassment. We agree with the magistrate that had Wheeler resigned in May or June, before the investigation by Southland and the placement of Schmidt in her store, she would have established a constructive discharge. We also believe that it is reasonably foreseeable that an employee who faces the kind of harassment to which Wheeler was subjected would resign. The question then becomes whether a reasonable employer would still have

---

**2.** Southland raises no issue on appeal concerning Wheeler's mitigation of damages after her resignation. We, therefore, do not reach any issue related to mitigation of damages.

**3.** We note that in *Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), this court stated a five-part test, which an employee must meet to prevail in a "hostile environment" harassment case, and held that to prevail in such an action, an employee must prove the existence of respondeat superior liability. *Id.* at 619–20. We believe the respondeat superior standard is subsumed in the reasonable employer test which we adopt for constructive discharge cases.

foreseen Wheeler's resignation, given the additional fact that after investigating the claim Southland did not immediately replace Abbattista, but rather placed a trainee in the store who would at some indefinite time in the future replace Abbattista.

The magistrate's finding that Wheeler believed she would have to continue to work under Abbattista because she did not know when or if he would be replaced is not clearly erroneous. The finding is supported by Wheeler's testimony and the testimony of Schmidt. Schmidt testified that he did not expressly tell Wheeler when he would replace Abbattista, but merely told her to "hang in there." This testimony indicates that Southland did not notify her that Abbattista would be replaced. Given this finding, the ultimate question on the intent issue is whether a reasonable employer would have foreseen that Wheeler would resign when she was forced to work under the person who was sexually harassing her without being told that the person would be replaced. We believe a reasonable employer would have foreseen that she would resign, since she was forced to remain in a hostile work environment without knowledge of Southland's plans to replace her harassing supervisor. Since the magistrate's amended finding on Wheeler's lack of knowledge of when, or if, Abbattista would be replaced is not clearly erroneous, we believe Wheeler's resignation was reasonably foreseeable. Accordingly, the intent element of constructive discharge was met.

### B.

The magistrate made the following findings, which relate to aggravating factors:

Plaintiff felt a lot of stress and hated to come to work, because she was afraid of the criticism she would receive from Abbattista.

Defendant's rejection of plaintiff's claim of harassment during a meeting with other managers present,[4] while not itself discriminatory, placed severe pressure upon plaintiff. She was forced to either return to work for Abbattista or resign.

Wheeler testified that she took sick leave because of the stress at work and that she decided not to return to work because she could no longer endure the stress. Also, Bonnie McDonald, Wheeler's assistant manager, testified that after Wheeler turned down Abbattista's invitation to accompany him to a bar, the atmosphere at the store went from relaxed to tense.

Finally, the nature of the discrimination itself was an aggravating factor. Abbattista initially sexually harassed Wheeler by engaging in unwanted touching and making crude comments. After she denied his invitation to go out with him, he became curt and overly critical of her work, thereby creating a tense working environment.

We believe the nature of the harassment to which Wheeler was subjected, and Wheeler's testimony that the stress and criticism made Wheeler hate to come to work, support the magistrate's finding of aggravating factors that further support the existence of a constructive discharge.

Although the magistrate may not have expressly labeled his findings on intent and aggravating factors, we believe that the evidence in this case supports his findings and that the magistrate did not err in determining that Wheeler had proven her constructive discharge claim.

### III.

■ Southland argues next that Magistrate Aug erred in holding it liable for back pay after November 15, 1985, the date Southland sold its 7–11 stores to UDF.

In ruling on this issue, Magistrate Aug held that Southland had not met its burden of demonstrating that Wheeler would not have been retained after the sale of the 7–11 stores to UDF. Southland does not contest the magistrate's allocation of the burden of proof and any argument concerning this allocation is considered waived.

---

4. At a managers-only meeting, which Wheeler attended, the district manager stated that there had been allegations of sexual harassment brought against Abbattista and that the company concluded that they were unfounded.

"It is ... the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). "[I]n the absence of exceptional circumstances, backpay should always be awarded when a Title VII violation is found.... Backpay awards should completely redress the economic injury the claimant has suffered as a result of discrimination." *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). The standard of review of backpay awards is "the familar one of whether the District Court was 'clearly erroneous' in its factual findings and whether it 'abused' its traditional discretion to locate 'a just result' in light of the circumstances peculiar to the case...." *Albermarle*, 422 U.S. at 424, 95 S.Ct. at 2375.

The magistrate was faced with the following evidence concerning the issue of whether Wheeler would have been retained after the sale to UDF. At the time of the sale, Southland offered transfers to certified store managers who had five years' experience.[5] Although Wheeler was decertified at the time of her constructive discharge, Southland could not predict if Wheeler would have been recertified after Abbattista was replaced as her supervisor, since they had never dealt with a decertified manager who was the victim of sexual harassment. At least one decertified manager had been recertified by Southland. Finally, there was evidence that Southland employees were retained by UDF after the sale.

Given the foregoing evidence, we do not believe the magistrate abused his discretion in holding Southland liable for back pay after the sale to UDF.

## IV.

 Finally, Southland argues that the magistrate erroneously denied its section 455 motion for recusal. 28 U.S.C. § 455. Southland argues that Magistrate Steinberg's bias is evidenced by: (1) his reversal of his original opinion and his issuance of a second opinion finding constructive discharge; (2) his statement that the plaintiff should be compensated; and (3) his over-involvement in settlement negotiations, including his suggestion that the plaintiff should receive no more than $15,000 in nominal damages.

Magistrate Steinberg justified his refusal to recuse based on the following factors: (1) the untimeliness of defendant's motion to recuse indicating an attempt to avoid an unfavorable ruling; and (2) the judicial source of alleged bias (statements at the settlement conference).

The standard for review of a lower court's denial of a motion to recuse is abuse of discretion. *In re City of Detroit*, 828 F.2d 1160, 1166 (6th Cir.1987).

The law with regard to recusal under section 455 is straightforward and well-established in the Sixth Circuit. A district judge is required to recuse himself " 'only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.' " *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir.1983) (quoting *Trotter v. International Longshoremen's & Warehousemen's Union*, 704 F.2d 1141, 1144 (9th Cir.1983)). This standard is *objective* and is not based "on the subjective view of a party." *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989).

Prejudice or bias must be personal, or extrajudicial, in order to justify recusal. *Id.* at 279. "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. *Demjanjuk v. Petrovsky*, 776 F.2d 571, 577 (6th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986). Personal bias arises

---

5. Had Wheeler not been constructively discharged, she would have had five years' experience at the time of the sale to UDF.

out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1965).

Southland does not allege any extrajudicial source, any association outside of the proceedings, or any basis other than what the magistrate learned from the case that justifies recusal. Southland argues only that the magistrate's participation in and statements made during a settlement conference gave the appearance of bias. Even accepting Southland's allegation that the magistrate stated an intention to award Wheeler up to $15,000 at the settlement conference, his statements and opinions arose only out of the proceedings.

Southland argues, however, that this court's recent ruling in *Anderson v. Sheppard*, 856 F.2d 741 (6th Cir.1988), supports the proposition that section 455 recusal should be granted when there is even an appearance of partiality and hostility toward one of the litigants.

Southland's reliance on *Anderson* is misplaced for several reasons. In the present action, Southland filed a motion to recuse pursuant to section 455, which mandates a showing of bias emanating from an extrajudicial source. *Anderson*, however, did not involve section 455, but was an appeal based on a claim that the actions of the district court had deprived the plaintiff of his right to a fair trial in a fair tribunal. *Id.* at 745. The *Anderson* court ruled that the open hostility and prejudice of the judge, as witnessed in the transcripts of a judicial proceeding in open court, showed that the judge was not an impartial arbiter. *Id.* at 747. In holding that the plaintiff did not receive a fair trial, the *Anderson* court reversed and remanded without having to consider the critical factor in section 455 review—whether the bias stems from an extrajudicial source.

The record in the instant case indicates that Southland is not advancing a funda-mental fairness argument but is invoking section 455. For this reason alone, its reliance on *Anderson* is misplaced. Furthermore, even if this court were to construe its argument on appeal as a due process argument, it could not prevail on the facts of this case, since *Anderson* requires that hostility and bias be clear and open and that the bias be evident on the record. *Id.* at 747.

Accordingly, we hold that the magistrate did not abuse his discretion in denying the motion to recuse.

## V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.