946 F.2d 894
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jean CONRAD, Plaintiff-Appellant,
v.
CHACO CREDIT UNION, INC., Defendant-Appellee.
 No. 90-3880.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1991.
 
 Before KENNEDY and MILBURN, Circuit Judges, and ZATKOFF, District Judge*.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff-appellant Jean Conrad appeals from the judgment of the district court entered in favor of defendant-appellee Chaco Credit Union, Inc. ("Chaco") in this age discrimination action after a jury returned a special verdict failing to find that age was a determining factor in Conrad's demotion. The principal issues presented in this appeal are: (1) whether the district court committed reversible error in excluding the proffered testimony of Joe Langdon, Tim Johnson, and Cynthia Downey; (2) whether the district court erred in refusing to instruct the jury on the doctrine of constructive discharge; and (3) whether the district court erred in dismissing Conrad's pendent state claims. For the reasons that follow, I would affirm in part, reverse in part and remand.
 
 I.
 A.
 
 2
 This action was filed under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Plaintiff also alleged age discrimination in violation of Ohio Rev.Code § 4101.17 and intentional infliction of emotional distress. The district court refused to exercise pendent jurisdiction reasoning that to entertain the state claims, especially the emotional distress claim, was to circumvent the limited remedies available under ADEA. Before the case was submitted to the jury, plaintiff asked for an instruction on constructive discharge. The court held that since plaintiff had not resigned and had not been discharged, an instruction on constructive discharge was not justified. Judgment was entered on August 30, 1990, and this timely appeal followed.
 
 B.
 
 3
 Defendant Chaco is a non-profit corporation organized under the laws of the State of Ohio with its principal place of business in Hamilton County, Ohio. Plaintiff Conrad was born in February of 1934 and began working at Chaco in September of 1969. In 1981 she was promoted to the position of senior loan officer, which position she occupied until her demotion to loan officer on July 21, 1988 (at age 54). From 1981 until March of 1987, Conrad consistently received favorable performance reviews. In March of 1987, Conrad received a review from her supervisor at the time, Mr. Thomas Wells, who rated her performance as only "satisfactory." After receiving the uncomplimentary performance evaluation, Conrad suffered a depressive reaction which required her hospitalization. According to Conrad's psychiatrist, her job was a "major pillar of stability," and the threats to her job precipitated the depressive reaction.
 
 
 4
 After returning to work, Conrad's performance was again evaluated in July of 1987. This review was prepared by Conrad's new supervisor, Ms. Jane Blank, and was complimentary. Conrad's overall rating was "effective." Conrad received a similar review from Ms. Blank in September of 1987.
 
 
 5
 The next indication of Conrad's performance is contained in a file memorandum prepared in January of 1988 by Conrad's new supervisor, Joe Langdon. Langdon's evaluation indicated that Conrad's attitude, judgment, and performance were "slipping." Langdon's memorandum listed specific examples of what he felt represented a deterioration in Conrad's performance, and Langdon testified at trial that what he wrote in the memorandum was true.
 
 
 6
 However, Langdon further testified on direct examination that plaintiff's performance was "average, acceptable." Langdon explained that on the first day of his employment with Chaco, executive vice president Chris Johnson went over a list of older loan officers that Langdon would be supervising and informed him "that the loan officers [had] been there a long period of time and they [Chaco] were just seeking ways maybe to get rid of them, eliminate them." In other words, Chaco "would rather have some new, fresher blood." J.A. 107. According to an offer of proof made by Conrad's counsel, if allowed, Langdon "would have testified that he was pressured by his superiors to put additional negative material into the reviews of older employees under his supervision and to minimize positive material in those evaluations." J.A. 215. Langdon's testimony was excluded under the rationale that the prejudicial statements allegedly made by management "must be limited to this plaintiff."
 
 
 7
 In February or March of 1988, Langdon was replaced as loan manager by Linda Scarth, who had been, and who continued to be, manager of the collection department. Scarth testified that her dual responsibilities made it imperative that the senior loan officer; viz., Conrad, function effectively. Because of past problems with Conrad's performance, Scarth met with Conrad and prepared a revised job description for the senior loan officer position. According to Scarth, this was a tactful way of informing Conrad that it was imperative that she function effectively and reminding other loan officers that Conrad had authority over them. Conrad was told that her performance would be reviewed in six months.
 
 
 8
 Scarth stated that Conrad's performance continued to deteriorate to the point that in July of 1988, she recommended to Chris Johnson that Conrad be demoted to the position of loan officer. Scarth documented errors made by Conrad which ranged from an excessive number of clerical errors to matters as serious as failing to take a complete credit history on a loan application. Johnson adopted Scarth's recommendation and implemented it. Scarth and Johnson met with Conrad in Johnson's office on July 21, 1988, and informed Conrad that she was being removed as senior loan officer and placed in the position of loan officer. Conrad was further told that her pay and benefits were to remain the same. Conrad wept openly upon being told of the demotion and was ashamed to return to her office and face her fellow workers.
 
 
 9
 Conrad did not return to work after July 21, 1988. According to Conrad, she suffered a "complete shutdown" which left her dysfunctional for a period of time. Conrad testified that she was hospitalized for a while[1] and was later told by Chris Johnson that she could not return to work as long as she was taking medication. The record indicates that as of the time of trial, plaintiff's treating doctor had not released her to return to work.
 
 
 10
 According to Chaco's witnesses, Conrad was not terminated and did not resign. She was free to return to work when allowed to do so by her doctor. Scarth testified that she frequently checked with Conrad as to when her doctor would be releasing her to return to work. Conrad was receiving disability insurance benefits as an employee of Chaco and would continue to receive the benefits indefinitely or until she retired. J.A. 201. Although the senior loan officer position was filled, Chaco's witnesses testified that Conrad's job as loan officer was left open, although a parallel position was created.
 
 
 11
 According to Eve Lominac, who occupied a position roughly equivalent to Scarth's in another department, she and Scarth had discussed Conrad's job description and agreed that in all probability, Conrad would not be able to handle the work "because [Scarth] was just going to have to increase the load until [Conrad] basically couldn't handle it." During the same week that Conrad was demoted, Lominac was on a business trip with Human Resources Manager, Mr. Doug Fecher. According to Lominac, Fecher told her one evening over dinner, "Well, by now Jean [Conrad] will no longer be at the credit union."
 
 
 12
 In Lominac's position, she regularly attended supervisors' meetings. Lominac testified that in these meetings she heard Chaco's president Bill Michaels refer to older female employees as "old broads" that needed to be "put ... out to pasture." J.A. 113. Lominac reportedly heard Michaels and Chris Johnson express fears that older workers "might not be flexible enough" and heard them express hopes that they could rid themselves of the older employees "so they could bring in new people that could bring in fresh blood to the credit union." J.A. 114. Lominac also told of hearing discussions about the possibility of retiring the older employees. J.A. 113.
 
 
 13
 In January 1989, Tim Johnson was hired as a loan officer at the credit union. Johnson testified that he was thirty years old when he was hired and was told that he would be replacing Conrad. Chris Johnson, the man that hired Tim Johnson, denied making the statement and claimed that Tim Johnson was filling an additional loan officer position that was created.
 
 
 14
 If allowed, Tim Johnson would also have testified that at the time he was hired, Chris Johnson told him that he wanted to get rid of older employees and bring in younger, degreed employees. Tim Johnson also would have testified that Chris Johnson told him that older employees were not desirable because they were not adaptable to computers, were resistant to change, and were less efficient than younger employees. Tim Johnson would further have testified that Chris Johnson asked him to closely observe older loan officers and report back any errors and mistakes that they made. Tim Johnson was prepared to testify that his observations in working with the older loan officers belied management's fears that the older employees were not adaptable to computers, were resistant to change, and were not as efficient as younger employees.
 
 
 15
 Tim Johnson would have testified specifically that an unfavorable performance evaluation of Ms. Cynthia Downey was not truthful. Downey had worked for Chaco since 1956. Downey testified at trial, stating that she was forced to retire in 1989 (at age 59). This testimony was stricken solely because Downey's separation came after plaintiff's demotion. Downey's proffered testimony that she received her first bad performance evaluation in 1989 was excluded for the same reason. Downey was permitted to testify that before plaintiff was demoted, older employees were subjected to "nitpicking" and were "written up for any little thing that we did." J.A. 34. Downey also testified that she was repeatedly encouraged by Scarth to retire and once overheard a member of management say, "Got to get these old broads out to pasture." J.A. 35.
 
 II.
 A.
 
 16
 A district court's ruling on evidentiary matters is reviewed for an abuse of discretion. Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). Abuse of discretion exists where the reviewing court is firmly convinced a mistake has been made. Id. at 157. Additionally, in order to justify reversal, the error must affect a party's substantial rights. Id.; see Zamlen v. City of Cleveland, 906 F.2d 209, 215-16 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991). The error is not harmless unless the court can say with fair assurance that the error did not affect the outcome of the case. Id. This determination is guided by such factors as the closeness of the case and whether the evidence bears heavily on a dispositive issue. Schrand, 851 F.2d at 157.
 
 
 17
 When considering a claimed error or omission in jury instructions, the reviewing court must consider the charge as a whole to see if it "fairly and adequately" submits the issues and applicable law to the jury. Miller v. Taylor, 877 F.2d 469, 471 (6th Cir.1989). "To effectively charge a trial court with failure to provide an instruction, one must first show the presence of evidence in the record sufficient to support submission of that instruction. Absent such evidence, nothing is present upon which the court could have based the refused instructions." Bucyrus-Erie Co. v. General Products Corp., 643 F.2d 413, 420 (6th Cir.1981) (citations omitted).
 
 
 18
 "The exercise of jurisdiction over pendent state claims is discretionary with the district court." Mitroff v. Xomox Corp. 797 F.2d 271, 278 (6th Cir.1986) (citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966)). Therefore, appellate review is for abuse of discretion. Jones v. Truck Drivers Local Union No. 299, 838 F.2d 856, 864 n. 1 (6th Cir.1988), cert. denied, 110 S.Ct. 404 (1989).
 
 B.
 
 19
 It was plaintiff's theory at trial that the management of Chaco, primarily vice president Chris Johnson, had determined to displace the older loan officers with younger employees. Plaintiff tried to show that because of its bias against older employees, Chaco was overly critical of their performance, looking for something to use as a pretext for discrimination. Plaintiff was successful in offering evidence of Chaco's alleged desire to put the "old broads out to pasture" and bring in "new blood." However, plaintiff was largely frustrated in her attempts to show the method whereby Chaco accomplished its alleged illegal objective.
 
 
 20
 A good example of this can be seen by examining plaintiff's assignment of error concerning the proffered testimony of Joe Langdon. Langdon was allowed to testify that management was looking for a way to rid itself of older loan officers; however, Langdon was not permitted to testify that his superiors told him to put negative material into the reviews of older employees and to minimize the positive material, thus exaggerating their errors. The district court excluded this proffered testimony on the ground that it did not directly relate to the plaintiff. The district court's ruling apparently was based upon lack of relevance and unfair prejudice.
 
 
 21
 The general rule for the admission of evidence is that "[a]ll relevant evidence is admissible, except as otherwise provided...." Fed.R.Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Courts have recognized that proof of a general pattern of discrimination makes it "more likely than not" that a particular adverse employment action was the result of a discriminatory criterion. Lynn v. Regents of the Univ. of California, 656 F.2d 1337, 1343 (9th Cir.1981), cert. denied, 459 U.S. 823 (1982). Moreover, courts have recognized that age discrimination cases are hard to prove and must often be proven indirectly by circumstantial evidence. La Montagne v. American Convenience Prods., Inc., 750 F.2d 1405, 1410 (7th Cir.1984). Langdon's proffered testimony of being told by Chaco's management to maximize negative material and minimize positive material in the reviews of the older employees, although indirect and circumstantial, was probative of the pattern of discrimination plaintiff alleged. Therefore, it was relevant.
 
 
 22
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. "In reviewing the trial court's decision for an abuse of discretion [in excluding evidence under Rule 403], the appellate court must view the evidence in the light most favorable to its proponent, giving the 'evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " Laney v. Celotex Corp., 901 F.2d 1319, 1320-21 (6th Cir.1990) (quoting United States v. Schrock, 855 F.2d 327, 333 (6th Cir.1988)). Moreover, it must be kept in mind that
 
 
 23
 "unfair prejudice" as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."
 
 
 24
 Koloda v. General Motors Parts Div., General Motors Corp., 716 F.2d 373, 378 (6th Cir.1983) (quoting Dollar v. Long Mfg., 561 F.2d 613, 618 (5th Cir.1977)). The damage to defendant by Langdon's testimony that he was told to put negative material in the reviews of older employees, while adverse to the defendant's position, was not unfairly prejudicial. Clearly, in my view, its probative value was not substantially outweighed by the danger of unfair prejudice.
 
 
 25
 Defendant attempts to justify the district court's ruling on the ground that Conrad was a senior loan officer instead of a loan officer during Langdon's tenure. This distinction is unpersuasive. It is clear from Langdon's testimony that Conrad was a member of the group of four older loan officers of which Chris Johnson spoke. Even though Langdon did not prepare a formal evaluation of Conrad's performance during his short tenure, he prepared a memorandum reflecting unfavorably upon Conrad's performance, and this memorandum was admitted into evidence. Langdon's testimony would have explained why the negative aspects of Conrad's performance were emphasized in his memorandum. Without the testimony, the jury was left to choose between Langdon's testimony on the stand that Conrad was an average, competent employee, and his memorandum reflecting unfavorably upon her performance. Not only would the proffered testimony have explained what appeared to be inconsistent statements by Langdon, but also it would have furnished a basis for the jury to infer that while Conrad's performance was far from perfect, she was competent in her position and would have been retained but for her age. See Chappell v. G.T.E. Prods. Corp., 803 F.2d 261, 266 (6th Cir.1986) (explaining ways in which plaintiff can establish that alleged reasons for adverse action are not credible), cert. denied, 480 U.S. 919 (1987).
 
 
 26
 Defendant also attempts to place Langdon's proffered testimony in the category of an abstract and ambiguous statement that does not necessarily show age discrimination. See Chappell, 803 F.2d at 268 n. 2. While Langdon's testimony that was admitted is arguably ambiguous, it is important to remember that the excluded evidence concerned alleged instructions by management to maximize negative material and minimize positive material in older loan officers' evaluations. This testimony would have been less ambiguous. Moreover, any ambiguity as to whether or not these statements related to age rather than longevity of employment must be viewed in light of other testimony which is clearly indicative of an age bias on the part of Chaco's management.
 
 
 27
 Apparently, the jury was persuaded by defendant's arguments that plaintiff's mental problems were the sole basis for her demotion. Giving Langdon's proffered testimony its maximum probative force and its minimum prejudicial value, it would have aided the jury's ability to consider the possibility that while plaintiff's mental distractions were among the reasons for her demotion, age was a determining factor. Thus, as to Langdon's testimony, I would conclude that it was an abuse of discretion to exclude the testimony and that the exclusion of the testimony affected the substantial rights of the plaintiff. Schrand, 851 F.2d at 157 ("[I]f one cannot say, with fair assurance ... that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.") (quoting Jordan v. Medley, 711 F.2d 211, 218-19 (D.C.Cir.1983) (Scalia, J.)); see Zamlen v. City of Cleveland, 906 F.2d at 215-16 (6th Cir.1990) (a reviewing court looks first to whether there was an abuse of discretion, and second to whether the error resulted in substantial injustice).
 
 
 28
 The excluded testimony of Tim Johnson and Cynthia Downey, at least in part, presents a closer question. The reason stated by the district court for excluding the testimony of both witnesses was that acts of age discrimination taken after the demotion of plaintiff were not "pertinent to this case." J.A. 31; see J.A. 37-40. Thus, lack of relevance was the ground for excluding the evidence.
 
 
 29
 Other courts have held that statements indicative of a bias against older employees, made after the alleged discrimination, are admissible. In Lockhart v. Westinghouse Credit Corp., 879 F.2d 43 (3d Cir.1989), plaintiff was terminated on May 3, 1983. In January of 1984, a senior vice president told an employee that "Westinghouse Credit was a seniority driven company with old management and that's going to change, 'I'm going to change that.' " Id. at 54. The Third Circuit held that this statement, although made seven months after the plaintiff's discharge, was admissible. "While there [was] no direct evidence that [management] made similar statements prior to the time that [plaintiff] was terminated, it would be reasonable for the jury to conclude that [management's] statement of January 1984 was not a recent managerial viewpoint, but that it was merely a cumulative statement of managerial policies that had been sanctioned or favored by top executives ... for a considerable time." Lockhart, 879 F.2d at 54. See also Neufeld v. Searle Laboratories, 884 F.2d 335, 340 (8th Cir.1989) (what management "said in March is certainly a good indication of what was on [management's] mind in February" where employee was discharged in March and management made statements indicative of age bias in March 1984).
 
 
 30
 The present case is even stronger because there was evidence of similar statements before Conrad's demotion. Accordingly, I would hold that it was an abuse of discretion for the district judge to exclude all the proffered testimony indicative of age bias after the date of plaintiff's demotion.
 
 
 31
 However, since the exclusion of that evidence does not constitute grounds for reversal unless it affected plaintiff's substantial rights, further discussion is necessary. Tim Johnson's testimony that Chris Johnson said he "wanted to get rid of older employees and bring in younger degreed employees" was highly relevant and affected plaintiff's substantial rights for the same reason that Langdon's testimony should have been admitted. In fact, Langdon's testimony in combination with Tim Johnson's testimony was probative of a continuing plan or policy on the part of management to force out older employees. Cf. Lockhart, 879 F.2d at 54. Likewise, Johnson's testimony that he was told to keep a critical eye on older employees and report their mistakes to management was consistent with Langdon's testimony that he was ordered to be overly critical of older employees. This testimony also goes to establish a policy of discrimination. It is significant that Chris Johnson was the management official allegedly responsible for instructing both Langdon and Tim Johnson to be overly critical of older employees.
 
 
 32
 Other parts of Tim Johnson's testimony are far more questionable. Tim Johnson would have testified about the performance of his co-employees. However, as pointed out by defendant, Tim Johnson's perception of the ability of older employees was not the critical question. Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir.1987). The critical question was whether age played a determining role in management's decision to demote Conrad. Tim Johnson did not observe Conrad's performance. He only observed those older loan officers that were still working after Conrad's demotion. Thus, I would hold that the district court was correct in excluding Tim Johnson's testimony about the performance of his co-workers, although the district court's reasoning was not altogether correct.
 
 
 33
 The proffered testimony of Cynthia Downey also presents a close question. In essence, Downey would have testified that she was forced to retire because of her age and that defendant's method was to give her an unfair, overly critical evaluation. There is the possibility that by allowing Downey's testimony, the district court would, in essence, be forced to litigate whether age discrimination was the cause of Downey's retirement.
 
 
 34
 Nevertheless, because of the probative value of Downey's testimony, and because its exclusion left plaintiff at a severe disadvantage, the district court should have allowed Downey to give at least limited testimony concerning the circumstances of her departure. Like Conrad, Downey was allegedly the victim of adverse employment action indirectly under the hand of Chris Johnson. Both employees went for years receiving favorable evaluations, and then suddenly received an unfavorable one. During cross-examination, defendant's counsel brought out the fact that Downey received favorable evaluations through the time of Conrad's demotion. However, Downey was not allowed to testify that she received an unfavorable evaluation after Conrad's demotion. Thus, the jury was left with the mistaken impression that Downey, an older employee, received nothing but favorable evaluations.
 
 
 35
 Downey should have been allowed to testify that she received an unfavorable evaluation when she was 59 years of age, that she felt pressured to retire, and that she did retire. This was consistent with and probative of the policy of discrimination that plaintiff sought to prove. In my view, the wholesale exclusion of Downey's testimony was an abuse of discretion and affected substantial rights of plaintiff Conrad.
 
 C.
 
 36
 The next issue to be considered is whether the district court erred in failing to instruct the jury on the theory of constructive discharge. The district court was convinced that the instruction was not appropriate since plaintiff had not been separated from employment. She had neither resigned nor been discharged.
 
 
 37
 The record supports the district court's ruling. Lacking evidence of some type of discharge, actual or constructive, plaintiff was not entitled to an instruction on the issue. See Bucyrus-Erie, 643 F.2d at 420. Plaintiff's counsel admits in his brief that "[a]t the time of trial, plaintiff had not formally resigned her employment with defendant." The record also shows that at the time of trial plaintiff was receiving disability benefits as an employee of defendant and had not been released by her doctor to return to work at Chaco. Defendant maintains that plaintiff is free to return to work.
 
 
 38
 It was plaintiff's burden to prove constructive discharge. Jurgens v. EEOC, 903 F.2d 386, 390 (5th Cir.1990). Other than the alleged condition that plaintiff could not return to work while under medication, plaintiff had not been told by anyone at Chaco not to return to work. In fact, plaintiff admitted that she never inquired of anyone at Chaco about the possibility of returning to work. J.A. 26.
 
 
 39
 Through counsel plaintiff argues on appeal, as she did before the district court, that actual resignation is not necessary as long as the employer intended to secure a resignation and created conditions such that a reasonable employee would have felt constructively discharged. See Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982); Wheeler v. Southland Corp., 875 F.2d 1246, 1249 (6th Cir.1989). While plaintiff correctly cites Wheeler as setting out the test for constructive discharge,[2] plaintiff fails to cite any authority upholding a finding of constructive discharge where there was not a termination of employment. It is implicit in the decisions dealing with constructive discharge that a plaintiff must be separated from employment by some mechanism like resignation or retirement. See Wheeler, 875 F.2d at 1248; Betts v. Hamilton Co. Bd. of Mental Retardation and Developmental Disabilities, 897 F.2d 1380, 1381 (6th Cir.) (involuntary retirement), cert. denied, 111 S.Ct. 397 (1990); Gomez v. Great Lakes Steel Div. Nat'l Steel Corp., 803 F.2d 250, 255 (6th Cir.1986) (forced into early retirement); Williams v. Caterpillar Tractor Co., 770 F.2d 47, 49 (6th Cir.1985) (resigned); Harrington v. Vandalia-Butler Bd. of Educ., 585 F.2d 192, 193 (6th Cir.1978) (disability retirement), cert. denied, 441 U.S. 932 (1979); Jurgens, 903 F.2d at 388 (early retirement); Mitchell v. Mobil Oil Corp., 896 F.2d 463, 466 (10th Cir.) (plaintiff "had to make ... a choice" and chose early retirement), cert. denied, 111 S.Ct. 252 (1990); Downey v. Southern Natural Gas Co., 649 F.2d 302, 303 (5th Cir. Unit B, 1981) (early retirement); see also Morris, Employment Discrimination Law 267 n. 42 (1989 Supp.) (citing cases dealing with constructive discharge). Accordingly, I would hold that having failed to prove that she was separated from her employment, plaintiff was not entitled to an instruction on constructive discharge.
 
 D.
 
 40
 The final issue to be addressed is whether the district court abused its discretion in dismissing, without prejudice, plaintiff's state law claims. See Jones, 838 F.2d at 864 n. 1 (abuse of discretion standard). Plaintiff argues that the district court did not exercise its discretion at all but based its decision on its belief that pendent jurisdiction was "nonsense." Plaintiff further argues that the district court had power to hear the state law claims because they, along with the federal claim, arose out of a common nucleus of operative facts. See J.P. v. DeSanti, 653 F.2d 1080, 1086 (6th Cir.1981). Plaintiff then attempts to persuade this court to follow Taylor v. Home Insurance Co., 777 F.2d 849 (4th Cir.1985), cert. denied, 476 U.S. 1142 (1986), as the leading case concerning pendent state claims in an age discrimination action. In Taylor, the Fourth Circuit affirmed the district court's assertion of pendent jurisdiction over an emotional distress claim because the plaintiff's "emotional condition was relevant to both his charge of age discrimination and [defendant's] defense." Id. at 861.
 
 
 41
 However, plaintiff completely ignores this court's decision in Mitroff v. Xomox Corp., 797 F.2d 271 (6th Cir.1986). Mitroff was an ADEA case in which this court affirmed the district court's dismissal of a pendent state claim brought under Ohio's age discrimination statute for compensatory and punitive damages. Mitroff was based on two considerations, both of which are present in this case.
 
 
 42
 In Mitroff, we found it significant that evidence relating to compensatory damages on the state claim injected possible prejudice as to the ADEA claim which did not allow compensatory damages. That the same is true in this case is illustrated by the attempt of plaintiff's counsel to bring out evidence of plaintiff's pain and suffering.
 
 
 43
 The other consideration in Mitroff was the uncertainty in Ohio law as to the damages recoverable in an action arising out of age discrimination, and the uncertainty is still present. Recently, the Ohio Supreme Court stated that Ohio Revised Code § 4101.17 does not confer a right to compensatory damages because "it may be reasonably presumed that if the General Assembly had intended to confer the right to compensatory and punitive damages, it could have expressly so provided." Hoops v. United Tel. Co., 50 Ohio St.3d 97, 101, 553 N.E.2d 252, 256 (1990). Although it seems unlikely, Ohio courts have not ruled as to whether a plaintiff can circumvent the limited remedies available under the Ohio statute by adding a common law claim of emotional distress as plaintiff has done in this case.
 
 
 44
 It is also significant that there is no right to a jury trial under Ohio's age discrimination statute. Hoops v. United Tel. Co. of Ohio, 50 Ohio St.3d 97, 553 N.E.2d 252 (1990). There is a right to a jury trial on a federal ADEA claim. 29 U.S.C. § 626(c)(2). Although the district court's explanation of its reasoning was not as clear as it could have been, this was not fatal to its ruling if the ruling was correct. See Mitroff, 797 F.2d at 278 (affirming district court although it did not explain reasons for its dismissal of state claims). The same reasons that supported the dismissal of the state claims in Mitroff support the dismissal of the state claims in this case. Accordingly, in my view, there was no abuse of discretion in the district court's refusal to exercise pendent jurisdiction over plaintiff's state law claims.
 
 III.
 
 45
 For the reasons stated, I would affirm the district court as to its dismissal of the state law claims without prejudice and its refusal to instruct the jury on constructive discharge; however, because the district court's exclusion of relevant evidence prejudiced substantial rights of the plaintiff, I would reverse the judgment of the district court and remand this case for a new trial.
 
 
 46
 KENNEDY, Circuit Judge, with whom Judge Zatkoff, District Court Judge, joins, concurring in part and dissenting in part.
 
 
 47
 I concur with Judge Milburn that the trial judge did not err in refusing to instruct the jury on constructive discharge or in dismissing the state law claims. I also agree with Judge Milburn that the court erred in confining plaintiff to evidence of what occurred before her discharge. However, I believe that the error was harmless or was waived by the failure to offer the evidence.
 
 
 48
 Plaintiff did not offer Joe Langdon's testimony that he was asked to put negative material in older employees' files. During the testimony of Mr. Langdon, the district judge asked counsel to make an offer of proof. Transcript of August 28, 1990 p. 58; Joint App. at 207. Counsel for plaintiff made the following proffer at that time:
 
 
 49
 MR. DORSEY: What he would testify is, with regards to the four specific people he mentioned, that Chris Johnson told him that the time has passed those people by. They weren't able to function effectively, and plaintiff was one of those four.
 
 
 50
 THE COURT: He may testify as to the plaintiff. He may not testify as to any other employees.
 
 
 51
 MR. DORSEY: Okay. So I would limit my question to him, withdraw the last question and limit it to the plaintiff.
 
 
 52
 THE COURT: To this plaintiff, and I think that is admissible.
 
 
 53
 Transcript of August 28, 1990 p. 59; Joint App. at 208.
 
 
 54
 The court ruled that Langdon could testify as to the plaintiff but not any other employee. When Langdon testified that there was no specific comments about plaintiff, the court permitted him to testify about general comments to get rid of older employees which included her. There is no reason to believe that the court would not have permitted testimony that Chris Johnson suggested putting negative material in older employees' files, a general comment in which plaintiff would have been included. Since plaintiff neither offered this later testimony or proffered it at that time, the substance of it was not made known to the court as required by Federal Rules of Evidence 103(a)(2). The subsequent proffer of the evidence in the absence of the judge permits us to know whether the evidence was relevant, but is not a substitute for an offer of the evidence.
 
 
 55
 Tim Johnson was not permitted to testify, as Judge Milburn notes, that in January of 1989 Chris Johnson told him that he wanted to get rid of older employees and bring in younger degreed employees. This testimony was cumulative of the testimony of Mr. Langdon that when he began work with defendant in September 1987, Chris Johnson made the general comment that "the loan officers have been there a long period of time and they were just seeking ways maybe to get rid of them, eliminate them. I don't like to use those words either, but they would rather have some new, fresher blood." Joint App. at 107. Chris Johnson was later called as a witness and was never asked about this statement so Langdon's testimony stands uncontradicted. In addition, Eve Lominac, who was manager of the Share Department at Chaco, testified that she attended management meetings, and that Bill Mitchell, the manager of the Credit Union, would refer to several of the people in the Loan Department and other older employees as "old broads" and on one occasion said that he needed to "put the old broads out to pasture." Joint App. at 113. Judge Milburn notes additional testimony of Lominac about getting rid of older employees and bringing in fresh blood. Mitchell was a witness and was never asked about this statement so it was never denied. In view of these two unrefuted statements, it seems to me that it was harmless error not to admit Tim Johnson's cumulative testimony of Chris Johnson's statement made six months after plaintiff's demotion.
 
 
 56
 The refusal to let Cynthia Downey testify that she had received a bad performance review is a little closer. The jury was left with the impression that here was an older employee whose performance reviews were all fine. In fact, they were all fine until the last one. With respect to the performance reviews, plaintiff merely sought to show that Downey received a bad performance review about 10 months after plaintiff was demoted. When asked at the bench what testimony plaintiff wished to offer, the following colloquy occurred:
 
 
 57
 MR. DORSEY: Mr. Maundrell has adduced evidence on cross indicating that this witness had positive performance reviews during a period, and I think the inference he is trying to draw to the jury is she was getting good performance reviews while my client was not. I would like to bring out that she got a bad performance review for the first time--
 
 
 58
 THE COURT: That is nothing probative in regard to your client, and I don't know that it has anything--
 
 
 59
 MR. DORSEY: I think he opened the door.
 
 
 60
 THE COURT: He may have, Mr. Dorsey, but it isn't a door through which you may pass.
 
 
 61
 Joint App. at 206. Nothing was said about it being evidence of a policy. I do not believe the relevancy of this testimony was apparent.
 
 
 62
 The court did strike the testimony that Downey had been forced to retire. However, Downey's testimony that she was constructively discharged or fired, which happened almost a year after plaintiff's demotion based on the evaluation of a supervisor who wasn't even there at the time of plaintiff's demotion, seems to me to be sufficiently remote that it was harmless. I do not believe it warrants a new trial.
 
 
 63
 When Joe Langdon left as manager of the Loan Department, Linda Scrath who was manager of the Collection Department, was made manager of both departments. She testified that as head of two departments she needed a senior loan officer who really did supervise the department. She didn't want plaintiff since she did not believe plaintiff could do the job. Chris Johnson insisted plaintiff be given an opportunity to do the job. A job description was drawn up. Scrath doesn't deny that she may have told others that she didn't think plaintiff could do all the things required by the job description. When plaintiff was called in and demoted from senior loan officer to loan officer, with no cut in pay, she was so distressed she has not been able to work since. The case really turned on whether plaintiff could do the expanded job duties and whether she made the mistakes and lacked the requisite judgment that Scrath said she did. Plaintiff testified that she didn't make the mistakes; Scrath testified she did. The jury heard that testimony reading plaintiff's explanations. I do not believe the excluded evidence would effect the jury's resolution of the case.
 
 
 64
 As we held in Zamlen v. City of Cleveland, 906 F.2d 209 (6th Cir.1990), with respect to evidentiary rulings:
 
 
 65
 First, a reviewing court will not reverse such a decision on appeal absent a showing of a clear abuse of discretion. Conklin v. Lovely, 834 F.2d 543, 551 (6th Cir.1987). Secondly, even if the lower court's decision amounts to an abuse of discretion, it will not be disturbed on appeal if it did not result in a substantial injustice, as "no error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such action appears to the court to be inconsistent with substantial justice."
 
 
 66
 Id. at 215-16 (citations omitted).
 
 
 67
 Accordingly, I would AFFIRM the judgment of the District Court.
 
 
 
 *
 Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Conrad's doctor verified that Conrad was hospitalized for a major depressive reaction. The doctor was of the opinion that job stress precipitated this reaction and plaintiff's earlier one in 1987. On cross-examination plaintiff's doctor admitted that plaintiff suffered a dysthymic disorder that "went back at least 15 years." J.A. 65
 
 
 [2]
 "This court has also endorsed the well recognized rule in labor relations that a man is held to intend the foreseeable consequences of his conduct. Therefore, an employee can establish a constructive discharge claim by showing that a reasonable employer would have foreseen that a reasonable employee (or this employee, if facts peculiar to her are known) would feel constructively discharged." Wheeler, 875 F.2d at 1249 (citation and footnote omitted)