35 F.3d 565
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Walter L. BURT, Plaintiff-Appellant,
v.
The BOARD OF EDUCATION OF the CITY OF GRAND RAPIDS and
Patrick Sandro, Defendants-Appellees.
 No. 93-1507.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1994.
 
 Before: MARTIN, NELSON, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a civil rights case in which the plaintiff, a school official who claims that he was constructively discharged, appeals from a summary judgment in favor of the defendants. Concluding, upon de novo review of the record, that there is no genuine issue as to any material fact and that the defendants were entitled to judgment as a matter of law, we shall affirm the district court's order.
 
 
 2
 * The plaintiff, Walter Burt, was employed as Assistant Superintendent of Human Resources in the public school system of Grand Rapids, Michigan. Mr. Burt began working for the school system in 1976, and he assumed the assistant superintendent position in 1990. His employment was governed by a two-year contract running from July 1, 1990, to June 30, 1992.
 
 
 3
 The contract contained the following provisions, among others:
 
 
 4
 "The Board hereby employs the Administrator in the position of Assistant Superintendent of Human Resources in the public schools of said School District.... The Administrator is subject to assignment and/or transfer to a new or different position at the sole discretion of the Board or its agents.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 The Administrator shall not be granted tenure in the position assumed under this contract, nor in any other employment than as a classroom teacher.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 This agreement may be terminated at any time for failure by the Administrator to meet any of its terms, all of which are material to continued employment. In the event of notice of termination, the Administrator may, upon written request made within ten days of the notice of termination, meet with the Superintendent of Schools to discuss the reason(s) for termination. Further, upon written request to the Board made within ten days of meeting with the Superintendent of Schools the Administrator may meet with the Executive Committee of the Board to discuss the reason(s) for termination.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 This contract sets forth the full terms and conditions of employment of the Administrator and is the only binding agreement between the Board and the Administrator regarding employment of the Administrator by the Board for the duration of this agreement."
 
 
 14
 The contract set Mr. Burt's salary at $71,343 per year.
 
 
 15
 In September of 1990 the school superintendent, defendant Patrick Sandro, advised Mr. Burt that two school employees, Elaine Jansen and Freddie Williams, had leveled sexual harassment charges against him. Mr. Burt says that he demanded a hearing to resolve the matter, but that Mr. Sandro told him the allegations were not sufficiently serious to merit a formal hearing.
 
 
 16
 Messrs. Sandro and Burt met again to discuss the charges on October 9, 1990. Again, says Mr. Burt, he asked that a hearing be conducted. After reviewing the charges with Mr. Burt, Mr. Sandro orally warned him not to retaliate against the two women or to interfere with their work activities.
 
 
 17
 The school system conducted its own investigation of the allegations, and on January 25, 1991, Mr. Burt met with Mr. Sandro and the school board's attorney to discuss the results of the investigation. Mr. Burt was informed that he would receive a written reprimand, based on the original charges and on subsequent allegations by the two women that Mr. Burt had publicly made derogatory comments about them in which he questioned their veracity. A thorough discussion ensued, and Mr. Burt again requested a formal hearing on the matter.
 
 
 18
 During the first week in February of 1991 the affirmative action officer for the school system advised the superintendent that he had seen Mr. Burt kissing a secretary at work. At a meeting with Mr. Burt on February 7, 1991, Mr. Sandro told Mr. Burt that effective the next day he would be transferred from his position as assistant superintendent to a position in the office of student services.
 
 
 19
 Throughout the time period in question the school system had a sexual harassment policy providing for the investigation and resolution of employee complaints of sexual harassment. The policy provided that the affirmative action officer would investigate any such complaints and would present the findings of the investigation at a hearing, along with statements and evidence from both the complainant and the accused. It is undisputed that no formal hearing of the sort contemplated by the sexual harassment policy was ever held in Mr. Burt's case.
 
 
 20
 With the transfer to his new position in the student services department, Mr. Burt had to work in a smaller office than the one he previously had occupied. He says that the new office, a photograph of which is included in the record, was "essentially a storage closet." He no longer had his own secretary, and when the school system's internal telephone directories were issued his name and position were not included. There was no formal job description for his new position, Mr. Burt says, and he characterizes his duties as "perfunctory." (He does not say exactly what those duties were.) Mr. Burt received the same salary and benefits in the student services job that he had received as assistant superintendent.
 
 
 21
 Mr. Burt remained in the student services position until November 1, 1991, when he resigned to accept a job as director of planning, research and evaluation in the public school system of Gary, Indiana. During much of the period between his transfer and his resignation Mr. Burt was on medical leave and did not come to work.
 
 
 22
 On August 21, 1991--two and one-half months before leaving the school board's employ--Mr. Burt filed the instant lawsuit against the school board and Mr. Sandro. The complaint alleged that the February transfer constituted a violation of Burt's Fourteenth Amendment due process rights. After his resignation Mr. Burt filed an amended complaint alleging that he had been constructively discharged and that the discharge deprived him of a property interest in his job without due process. The amended complaint also asserted that statements said to have been made about him by Mr. Sandro deprived him of a liberty interest in his reputation, in violation of his rights under the Fourteenth Amendment. Finally, the amended complaint alleged a pendent state law cause of action against Mr. Sandro for slander.
 
 
 23
 On June 30, 1992, the district court dismissed the slander claim without prejudice, declining to exercise supplemental jurisdiction over it. Pursuant to 28 U.S.C. Sec. 636(c) the parties stipulated that further proceedings would be conducted before a magistrate judge.
 
 
 24
 On March 11, 1993, the magistrate issued an order and opinion granting summary judgment in favor of the defendants and dismissing Mr. Burt's complaint. The magistrate concluded that Mr. Burt lacked a property interest in the position of assistant superintendent and that his transfer was therefore not actionable under 42 U.S.C. Sec. 1983. The magistrate also concluded that Mr. Burt's liberty interest in his reputation had not been infringed by Mr. Sandro.
 
 
 25
 Mr. Burt filed a timely notice of appeal from the order granting summary judgment and the order dismissing his pendent state law claim.
 
 II
 
 26
 * To prevail on a Sec. 1983 due process claim, a plaintiff must show that government action deprived him of a legally cognizable interest in life, liberty or property. Only after such a showing has been made need a court consider whether the plaintiff received the quantum of process that was due.
 
 
 27
 Mr. Burt has not been able to show that he had a property interest in the position of Assistant Superintendent of Human Resources. His contract with the school board explicitly stated that he could be transferred to another position, at any time, in the sole discretion of the superintendent. The contract expressly provided, moreover, that Mr. Burt was not to receive tenure in the assistant superintendent's position. No Michigan statute entitled Mr. Burt to remain in that particular job once he assumed it. Standing alone, therefore, the transfer cannot support a Sec. 1983 claim.
 
 
 28
 Mr. Burt attempted to avoid this problem by asserting that he had a property interest in continued public employment; that he was deprived of that interest by a "constructive discharge;" and that the deprivation occurred without his having been accorded such process as was due. The magistrate judge did not address this argument, focusing exclusively on whether Mr. Burt had a property interest in a particular job. This failure to come to grips with the plaintiff's theory is not fatal to the judgment, because, for one thing, the record discloses no basis on which a trier of fact would be entitled to conclude that Mr. Burt was the victim of a constructive discharge. For another thing, as discussed in n. 2, infra, there does not appear to have been any denial of the constitutionally protected right to notice and an opportunity to be heard.
 
 
 29
 Mr. Burt is correct in arguing that he had a property interest in some form of continued employment with the school system. He was party to a valid contract of employment with the school board, and the contract provided that he could be discharged only for cause. His discharge from that employment, whether actual or constructive, could be accomplished only with the accoutrements of appropriate process. Constructive discharge is, at least in part, a question of law. Yates v. Avco Corp., 819 F.2d 630, 636 (6th Cir.1987).
 
 
 30
 Taken in the light most favorable to Mr. Burt, the facts on which he relies simply do not make out a constructive discharge. Such a discharge cannot occur without the employer intentionally making the employee's working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Easter v. Jeep Corp., 750 F.2d 520, 522-23 (6th Cir.1984). An employee's perception of his situation is judged objectively. "An employee may not be unreasonably sensitive to his working environment. A constructive discharge arises only when a reasonable person would find conditions intolerable." Henry v. Lennox Inds., Inc., 768 F.2d 746, 752 n. 3 (6th Cir.1985) (emphasis added).
 
 
 31
 Mr. Burt maintains that any reasonable person in his position would have felt compelled to resign. Being moved to a smaller office, being divested of personal staff support, and being left out of the school telephone directory, he asserts, made his conditions of employment unbearably difficult.
 
 
 32
 We are not persuaded. Mr. Burt was not abused, threatened, or harassed on the job. His pay was not cut. He was not required to perform demeaning tasks. The student services job was not so unbearable that he could not continue drawing his pay for nearly a year after the transfer--and he did not resign until he had lined up a responsible position elsewhere. Perhaps most significantly, the transfer was clearly permitted under the terms of the employment contract.[1]
 
 
 33
 Where an employee has been subjected to abuse and harassment on the job, or has suffered a marked reduction in pay, a constructive discharge claim may be viable. See, e.g., Wheeler v. Southland Corp., 875 F.2d 1246, 1249 (6th Cir.1989) (sexual harassment); Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982) (harassment); McCann v. Litton Sys., Inc., 986 F.2d 946, 952 (5th Cir.1993) (pay cut); Shealy v. Winston, 929 F.2d 1009, 1013 (4th Cir.1991) (demotion resulting in a "[m]erely awkward situation [ ]" insufficient to support constructive discharge claim); Jett v. Dallas Indep. School Dist., 798 F.2d 748, 755 (5th Cir.1986) ("Although a demotion or transfer in some instances may constitute a constructive discharge ... constructive discharge cannot be based upon the employee's subjective preference for one position over another"). Mr. Burt's pay was not cut in connection with his transfer, and he was not abused or harassed in any significant way. He had no contractual right to a secretary, a spacious office, or a listing in the telephone directory. He did have a right to continued employment, and that right was not taken away from him. As we observed in Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 515 (6th Cir.1991), "[t]he presentation of other legitimate options for continued employment with the [employer], even in a less prestigious position, precludes a finding that [plaintiff] was constructively discharged."[2]
 
 B
 
 34
 Since Mr. Burt was not discharged, either formally or constructively, his Sec. 1983 claim based on damage to reputation is not viable. As the magistrate judge noted in his opinion, a defamation claim against a public employer implicates constitutional protections only where "the defamation ... occur[s] in the course of the termination of the employment." Thomson v. Scheid, 977 F.2d 1017, 1020 (6th Cir.1992), cert. denied, 113 S.Ct. 2341 (1993). When termination of public employment is based on a charge of dishonest or immoral conduct, an employee's liberty interests are at stake--such a charge can "foreclose [the employee's] freedom to take advantage of other employment opportunities"--and due process protections are required. Board of Regents v. Roth, 408 U.S. 564, 573-74 (1972). Because the school system did not terminate Mr. Burt's employment, it did not infringe any liberty interest, and relief is not available under Sec. 1983.[3]
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 Mr. Burt relies heavily on Meyers v. Cincinnati, 728 F.Supp. 477 (S.D.Ohio 1990), aff'd in part and rev'd in part, on other grounds, 934 F.2d 726 (6th Cir.1991), in support of his claim that he was constructively discharged. Meyers was a case in which a firefighter was given a choice between resigning and being demoted; the district court held that the plaintiff had been constructively discharged. We are by no means sure the district court's opinion in Meyers is consistent with the case law of this circuit, and there are a number of distinguishing circumstances in any event. Most notably, in Meyers the employer had created a "coercive" environment by repeatedly inviting the plaintiff to resign and, ultimately, giving him two days in which to make a decision with "lifelong impact"--whether to accept the demotion or resign. The demotion would have resulted in a decrease in Mr. Meyers' "benefits and retirement pay." Id. at 482
 Here, no one ever asked Mr. Burt to resign from employment in the schools, and the change in his assignment bore no negative economic consequences for him.
 
 
 [2]
 Even if Mr. Burt had been constructively discharged, it is most unlikely that we could have concluded he was denied due process. The record indicates that Mr. Burt received notice of the allegations against him and that he was given several opportunities to present his responses to Mr. Sandro, the relevant decisionmaker. The fact that the formal, trial-like procedures of the school district's sexual harassment policy were not invoked lacks constitutional significance, because the Due Process Clause does not require the application of those procedures to this case. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541-46 (1985); Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976)
 
 
 [3]
 In his notice of appeal, Mr. Burt stated that he was appealing both the 1992 order declining to exercise pendent jurisdiction over the slander claim and the 1993 summary judgment order. In his brief, however, Mr. Burt has not advanced any reason for questioning the propriety of the 1992 order