Barbie BLACK, Plaintiff,

v.

Newton KENDIG, et al., Defendants.

No. CIV.A. 962508EGSJMF.

United States District Court, District of Columbia.

Oct. 28, 2002.

Richard Louis Brusca, Antone M. Meaux, Skadden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, for Plaintiff.

Barbie Black, Estill, SC, Pro se.

Nancy R. Page, William Mark Nebeker, Jennifer U. Toth, Vincent Hamilton Cohen, Jr., U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Currently pending and ready for resolution is *Defendant's Motion for Recusal and Memorandum in Support.* After careful consideration and for the reasons articulated below, defendant's motion will be granted, albeit for different reasons than the defendant offers.

### BACKGROUND

On January 21, 2000, Judge Sullivan referred this case to me for settlement. I spoke with and met with the parties on numerous occasions during which we had frank discussions about this case. On June 26, 2001, I flew to Augusta, Georgia and met with plaintiff personally in the prison in which she was confined to discuss her case and finalize the details of the settlement. On July 23, 2001, Judge Sullivan accepted the settlement agreement and my referral ended.

On May 21, 2002, almost one full year after the parties had ostensibly reached a settlement, plaintiff moved for reinstatement of his complaint, expedited discovery, leave to file a second amended complaint, a preliminary injunction, and a temporary restraining order. On May 22, 2002, Judge Sullivan re-referred the case to me for a Report and Recommendation on the pending motions. The parties are now bitterly divided over the meaning of one provision of the settlement agreement.

The agreement allowed the Bureau of Prisons a three month period during which it was obliged to create and propose a treatment plan for plaintiff.[1] Dr. Frederick S. Berlin was also to prepare a treatment plan. Once both proposals were prepared, paragraph 5 of the agreement provided:

> The BOP's Medical Director, Dr. Newton E. Kendig, will review the BOP's assessment and treatment plan, together with the assessment(s) and treatment plan(s) prepared by Dr. Berlin and the BOP's consulting doctor if any. Dr. Kendig will then decide which plan, or combination of plans, will be offered to plaintiff.

As plaintiff reads this provision, Kendig is obliged to adopt a treatment plan and order that plaintiff be given estrogen therapy if the plans recommended it. Defendant denies that this provision imposes any such obligation on Kendig. As defendant sees it, he can refuse to give plaintiff estrogen therapy even though, for example, both Dr. Berlin and the BOP treatment plan recommend it.

Defendant now seeks my recusal.

---

1. Plaintiff, a pre-operative transsexual, seeks estrogen therapy.

The pertinent sections of the recusal statute provide:

§ 455. Disqualification of justice, judge, or magistrate judge

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C.A. § 455(a) & (b) (1993).

To resolve the government's motion, it is first helpful to clear some brush away.

■ First, while it is not clear that the government still relies upon the point, I do not have any disqualifying "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C.A. § 455(b)(1). Obviously, presiding over the settlement discussions is within my judicial responsibilities and I gained no knowledge of any facts pertaining to this dispute in any other way. Recusal on this ground is, therefore, unavailable. *U.S. v. Pollard,* 959 F.2d 1011, 1031 (D.C.Cir.1992)(only personal knowledge of disputed facts gained other than by presiding requires reversal).

Second, I have no intention whatsoever of permitting either party or myself to breach the confidentiality of the settlement discussions. As the government points out, I yield to no one in my insistence that settlement discussions remain confidential. *See Childers v. Slater,* 1998 WL 429849, at *6 (D.D.C.1998)(Facciola, J.). I will not permit either party to refer in any way to anything anyone, including me, said during

settlement discussions. My issuing a Report and Recommendation in this case will, therefore, not threaten either a violation of Fed.R.Evid. 408, of the wise policy that animates it, or of the Court's own Mediation Program.

Third, it is certainly not true that presiding over settlement discussions requires the recusal of a judge who then must preside over the case that was not settled. The converse seems to be true. *See e.g., Franks v. Nimmo,* 796 F.2d 1230, 1235 (10th Cir.1986); *Bilello v. Abbott Lab.,* 825 F.Supp. 475, 478–79 (E.D.N.Y.1993); *Geneva Assurance Syndicate, Inc. v. Med. Emergency Serv. Assoc.,* No. Civ. A. 92–1652, 1993 WL 384566, at *3 (N.D.Ill. Sept. 28, 1993); *U.S. v. Conservation Chemical Co.,* 106 F.R.D. 210, 234–35 (W.D.Mo.1985). Any such absolute rule would be silly. Some settlement discussions begin with the defendant offering "nuisance value" and the plaintiff walking out five minutes later in a huff. To preclude the magistrate judge who presides over such theatrics from then doing anything else in that case is to waste a judicial resource as badly as cutting one's throat on a good rug.

■ What I think the government is grasping for but cannot reach, is the real question presented: whether, having presided over the settlement discussions, I should then resolve what the parties meant during those very settlement discussions because they so utterly disagree over what the agreement means.

Judges are presumed to be able to compartmentalize information upon which they can predicate their decisions, and information of which they are otherwise aware, but cannot use as a basis for their decisions.[2] It is also said that whether or not

---

2. *Clifford v. U.S.,* 136 F.3d 144, 149 (D.C.Cir. 1998). Judges are also presumed to be im-

the appearance of impartiality is offended is to be determined objectively, not subjectively.[3] The question is not whether I think that I can be objective and fair but whether a reasonable, objective person has reason to doubt my impartiality no matter how fair I think I can be.[4] To put this all together, the question is whether a reasonable person would find that the appearance of fairness would be offended by a magistrate judge resolving the interpretation of a contract that the parties negotiated under that judge's intensive supervision. While the question is a close one, I believe that I must recuse myself.

No matter how much I am presumed to be able to compartmentalize information I learned while presiding over the settlement discussions from any evidence the parties may tender at any hearing, I would be obliged to engage in remarkable mental gymnastics. I would have to consider what the parties said occurred during their settlement discussions while mentally suppressing my own recollection of what they said. I would have to segregate what they claimed they intended from what I perceived they intended based on what I heard them say during the settlement discussions.

Indeed, there is one view of the matter that suggests that it is not too far fetched to imagine that I could become a witness in this case if the parties differ bitterly as to what occurred at the settlement discussions and Judge Sullivan, in his wisdom, decided that one party or the other could call me as a witness.[5] While I cannot

predict with certainty that any of this will occur, the possibility that I might have to be a witness gives me pause. If, in the interim, I provide Judge Sullivan with a Report and Recommendation that speaks to the very issue about which I might have to testify, I would be acting as witness and judge in the same case. I cannot imagine how any one could possibly defend such a curious mixing of roles. I surely believe that any reasonable person would find that co-mingling highly offensive to the appearance of impartiality.

Finally, there is an institutional interest that has to be factored into the calculus. As the government correctly points out, presiding over settlement conferences has become an important responsibility of magistrate judges. At the same time, their responsibilities over the substantive aspects of cases have grown as well. For example, more parties express their consent to magistrate judges' presiding over trials. I have held enough settlement conferences to know that my success is a direct function of the parties' certainty that what they tell me will remain confidential and their perception of my utter objectivity. I can easily understand why a party would be less than frank if that party could foresee the possibility that what they said to me during settlement discussions would influence how I would ultimately rule on a substantive matter in the same case. The impact that fear would have on the success I might otherwise achieve in settling that case compels me to conclude that the line between the

---

partial, but a wag would note that they created this presumption.

**3.** *Liteky v. U.S.*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

**4.** *In re: Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 343 (3rd Cir. 1998).

**5.** In one instance, pursuant to the order of Judge Kollar–Kotelly, I gave a deposition as to what occurred during settlement discussions.

magistrate judge as mediator and the magistrate judge as presiding judge must be kept straight and true.

I, therefore, have decided to recuse myself from issuing the Report and Recommendation. On the other hand, I note my continued desire to help the parties finally settle this matter if they believe I can assist them.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby,

**ORDERED** that *Defendant's Motion for Recusal and Memorandum in Support* [# 119] is **GRANTED**.

**SO ORDERED.**