NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0494n.06
Filed: July 13, 2007

Nos. 06-3091, 06-3624, 06-3625, 06-3626, 06-3894, 06-3895

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CATHERINE BOSLEY, also known as Catherine Balsley, and RICHARD BROWN, | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| 21 WFMJ TELEVISION, INC., MICHELLE NICKS, and JOHN URCHEK, | ) ) ) ) ) | |
| Defendants-Appellants. | ) | |

Before: GIBBONS and COOK, Circuit Judges; CLELAND, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellees Catherine Bosley and Richard Brown (collectively "plaintiffs") brought the instant action raising a copyright infringement claim and a number of other state law claims. Defendants-appellants 21 WFMJ Television, Inc. ("21 WFMJ"), Michelle Nicks, and John Urchak (collectively "defendants") challenge orders of the district court: (1) denying defendants' motions for summary judgment as to plaintiffs' claims and granting plaintiffs' motion for summary judgment as to defendants' counterclaim; (2) granting plaintiffs'

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

motion to enforce an oral settlement agreement; and (3) denying Nicks's and 21 WFMJ's two joint motions requesting that the district court judge recuse himself.

For the reasons that follow, we (1) affirm the district court's order enforcing the parties' oral settlement agreement in accordance with the terms specified in that order; (2) affirm the district court's denial of the motions for recusal; and (3) dismiss the remainder of the appeal as moot.

I.

The events giving rise to the instant suit involve the copying and distribution of a video in which Bosley was depicted in a state of undress while participating in a wet T-shirt contest at a bar in Key West, Florida. The proceedings in the district court have been extensive and rancorous, and while the parties vigorously dispute the merits of their claims, the underlying facts relevant to these merits issues are, for the most part, unnecessary to the disposition of this appeal. We instead must focus our attention on the proceedings below and the facts related to the parties' settlement negotiations as our ultimate finding that the parties did reach a full settlement of all claims obviates any need to resolve the parties' dispute over the merits of their claims.

Plaintiffs filed suit against defendants on December 23, 2004. Following the parties' motions for summary judgment, the district court denied summary judgment on plaintiffs' claims as to both parties and granted summary judgment to plaintiffs on defendants' counterclaim. On November 25, 2005, several days before trial was scheduled to begin, defendants notified the district court that the parties had effectively settled their dispute and advised the court that there was no need to impanel a jury. Following defendants' notice, the district court, *sua sponte*, dismissed the case with prejudice, retaining jurisdiction over any settlement disputes or disputes involving the parties' memorialization

of the settlement terms. Defendants filed a timely notice of appeal as to this dismissal in which they challenge the district court's rulings on the parties' motions for summary judgment.

In the interim, the parties attempted to finalize their settlement agreement, but a dispute arose as to its terms. On January 9, 2006, plaintiffs filed a motion seeking enforcement of the parties' settlement agreement and alleging that defendants were attempting to modify the terms of settlement and add additional terms to which the parties had never agreed. The district court referred that motion to a magistrate judge, and the magistrate judge conducted an evidentiary hearing on January 30, 2006. In his report and recommendation, the magistrate judge recommended that the district court find that the parties settled their dispute according to the terms outlined therein and grant plaintiffs' motion. The district court adopted the report and recommendation in full. The district court also denied two joint motions filed by Nicks and 21 WFMJ seeking recusal of the district court, one of which was filed before the district court adopted the report and recommendation and one of which was filed after. Defendants filed timely notices of appeal as to each of these rulings.

II.

As a threshold matter, we must address defendants' challenge to the propriety of the district court's exercise of jurisdiction over the plaintiffs' motion to enforce settlement. Relying upon the reasoning of *Earth Island Inst. v. Albright*, 147 F.3d 1352 (Fed. Cir. 1998), defendants contend that plaintiffs unconditionally withdrew their motion to enforce the oral settlement agreement, rendering their motion moot and depriving the district court of subject matter jurisdiction. Accordingly, defendants argue, we should vacate the district court's order granting plaintiffs' motion. In *Earth Island*, the Federal Circuit held that a movant's unconditional withdrawal of its pending motion

3

deprives the district court of subject matter jurisdiction over that motion and prevents the district court from rendering a decision on the merits. 147 F.3d 1356-57.

Defendants' mootness argument has its genesis in three documents plaintiffs filed with the district court between January 19 and 20, 2006. On January 19, plaintiffs filed two items: (1) a notice that plaintiffs intended to withdraw their motion requesting that the district court enforce the parties' oral settlement agreement and (2) a motion requesting that the district court set aside its judgment of dismissal and set a new date for trial. The docket entry for the former filing identifies it as having been "FILED IN ERROR." The docket entry also states that the plaintiffs will refile the document as a motion. On January 20, plaintiffs filed a document identical in all respects to the original notice of withdrawal except that it is captioned on the docket sheet as a motion.

On different facts, defendants' argument would be more compelling. However, the case before us is distinguishable from *Earth Island*, and that decision has no bearing on our decision today. In that case, after the plaintiff sent a letter to the court explaining its intent to withdraw the motion for summary judgment, the district court ignored the unequivocal language contained in the correspondence and recharacterized the filing as a petition for leave to withdraw, which it in turn denied. *Earth Island*, 147 F.3d at 1356. Furthermore, following Earth Island's letter, no further action was taken by either party, and eighteen days later, the district court simply issued an opinion granting Earth Island's original motion. *Id.*

While there can be no doubt that the document filed with the district court expresses a unilateral desire on the part of the plaintiffs to withdraw their motion, the similarity between this case and *Earth Island* ends there. First of all, the first of the two documents is listed as erroneously filed, and the second is captioned as a motion. Of course, errors in docketing are not unheard of, but it is

4

telling that neither the parties nor the court treated this second filing as a withdrawal of plaintiffs' pending motion. The voluminous filings and rather vigorous disagreement between the parties over whether and under what terms the parties had settled confirm that the controversy was not moot. In fact, when pressed on this point at oral argument, defendants' counsel effectively conceded that whatever plaintiffs' position may have been at the time the motions were filed, the frustration they felt in attempting to enforce settlement that prompted their efforts to withdraw their motion had been alleviated, and plaintiffs were prepared to litigate the dispute over settlement. Quite simply, the fifteen months of continued litigation belies any claim by defendants that the settlement dispute was no longer live. We therefore see no error in the district court's exercise of jurisdiction over plaintiffs' motion.

III.

We now turn to the defendants' claim that the district court erred in granting plaintiffs' motion to enforce settlement.

A.

In reviewing a district court's decision to grant a party's motion to enforce an oral settlement agreement, this court reviews the district court's factual determination that the parties have agreed to settlement and of the terms of settlement for clear error. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001). We review a district court's decision to enforce that agreement based on these preliminary factual findings for an abuse of discretion. *Id.*; *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir. 2000). The fact that the parties have yet to reduce their agreement to writing is no bar to enforcement: "[w]hen parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Re/Max*, 271 F.3d at 646 (citing cases).

5

An abuse of discretion exists when the reviewing court is "left with the definite and firm conviction that the [district] court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard." *Id.* at 645 (internal quotation marks omitted). A factual finding is clearly erroneous "where although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 825 (6th Cir. 2007) (internal quotation marks omitted).

B.

Plaintiffs first argue that defendants have waived their right to appeal the district court's adoption of the magistrate judge's report and recommendation because of their failure to object in a timely fashion. In *United States v. Walters*, this court held that a party's failure to object to a magistrate judge's report within the time provided for filing objections operates as a waiver of that party's right to appeal. 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140, 142 (1985) (approving *Walters* rule). However, this rule is procedural and not jurisdictional, and the court may excuse compliance with it in the interests of justice. *See Thomas*, 474 U.S. at 155.

Defendants concede the untimeliness of their objections, but they urge us to follow the rule adopted in *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983). *Patterson* provides, in relevant part, "when written objections to a magistrate's report are tendered beyond the 10 day period . . . , but are nevertheless filed and considered by the district court, the criteria identified in *Walters* in justification of the waiver rule . . . dissipate[,] and the rule will not apply to bar appellate review." 717 F.2d at 286;

6

*see also O'Neal v. Morris*, 3 F.3d 143, 144-45 (6th Cir. 1993), *vacated on other grounds sub nom.*, *O'Neal v. McAninch*, 513 U.S. 432 (1995).

The district court did not specifically address the merits of each objection raised by the defendants and expressly refused to allow the defendants to file untimely objections, granting plaintiffs' motion to strike the objections as untimely filed. Thus, there is an argument that *Patterson* is not controlling in this case. However, a review of the district court's order reveals that the court did address defendants' principal objections to the report and recommendation even though it was under no obligation to do so. As a matter of substance, if not form, the district court elected to address defendants' objections. Accordingly, we do not believe that the record before us justifies application of the *Walters* rule and will therefore address the merits of defendants' appeal.

C.

The record before us provides ample evidentiary support for the district court's factual findings regarding the terms of and the parties' entry into a settlement agreement. Moreover, defendants have provided no evidence that would call the district court's findings into question. Therefore, as explained below, we find no error in the district court's decision to grant plaintiffs' motion to enforce settlement.

As an initial matter, defendants argue that the district court erred in its overall finding that the parties reached agreement as to the essential terms of settlement. Defendants characterize the conversations between Andrew Kabat, counsel for plaintiffs, and Stephen Bolton, counsel for defendants–found by the district court to have established the essential terms of the agreement–were little more than preliminary negotiations. Defendants further assert that it was improper and inequitable for the district court to hold the parties to obligations allegedly incurred during these

7

negotiations, the product of which was an incomplete contract. Defendants do not identify, however, what elements were missing from the agreement at the time they notified the district court that there was no need to impanel a jury because the case had been settled. Defendants seem to assume that because they would have preferred that the agreement contain terms different from those agreed upon by Bolton and Kabat, the agreement must necessarily be incomplete, and as a consequence, there was no meeting of the minds. Just as the district court observed, however, the objective acts of the parties do not support defendants' position. *See Re/Max*, 271 F.3d at 646 (noting that even though the parties had not yet formalized their agreement in writing, their "objective acts . . . reflect[ed] that an agreement had been reached").

Days before trial, defendants filed a "Notice of Settlement," notifying the court that there was no need to impanel a jury because the parties had "effectively reached a settlement." This notice did not state that the parties were *close* to settlement or that talks were *on the verge* of producing an agreement. Rather, the defendants themselves stated that agreement had effectively been reached and that the process of drafting documents had begun. Moreover, the notice contained no hint that settlement was contingent on the negotiation of additional terms or, as defendants' counsel asserted at oral argument, the actual memorialization of the agreement terms in a written document. Defendants make much of their use of the word *effective* in the notice filed with the district court. While this may communicate some degree of equivocation, it provides little support for defendants' claim that settlement was somehow contingent on the negotiation of additional material terms. In addition, neither party objected when the district court, upon receipt of defendants' notice, dismissed the case with prejudice, retaining jurisdiction only to resolve any disputes over settlement terms. A settlement agreement, like any other contractual arrangement, depends upon objective, not subjective,

8

manifestation of intent. *See Therma-Scan, Inc.*, 217 F.3d at 420 (citing *United Paperworkers Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252, 1258 (5th Cir. 1990)). By all appearances, the parties operated as if their dispute had been resolved. Defendants point to nothing in the record–beyond their own undisclosed subjective intent–that would call the district court's finding of an agreement into question, much less support a finding of clear error.

The district court found that the parties agreed to the following terms: (1) payment of a specified amount by defendants to plaintiffs; (2) confidentiality as to that amount; (3) mutual release of all claims against all parties; (4) plaintiffs' release of all parties named in their complaint, including those not specifically identified; and (5) language in the judgment of settlement indicating that costs of the litigation would be paid by the plaintiffs.

In the report and recommendation adopted by the district court, the magistrate judge conducted a thorough examination of the evidentiary record compiled by the parties. The magistrate judge laboriously documented the evidentiary support for each term identified above, noting that each was corroborated in the testimony of both Kabat and Bolton.

With respect to the confidentiality term of the settlement, defendants argue that the district court clearly erred in finding that the confidentiality provision was limited to the sum to be paid plaintiffs by defendants. Defendants direct our attention to portions of Bolton's testimony suggesting that he and Kabat never discussed confidentiality except insofar as it related to the amount of the settlement and that the defendants never intended to limit the confidentiality provision only to the amount of settlement. Of course, as the magistrate judge observed, Kabat testified that he explained to Bolton that plaintiffs were willing to agree to confidentiality only as to the *settlement amount*. Bolton further testified that he understood Kabat's position and that he acquiesced to it. Defendants

argue that Bolton never intended to limit the confidentiality provision in this manner and that he simply expected to work out the rest of the details as a later date; however, as Bolton acknowledged, he never made Kabat aware of his intentions during their conversations.

As to the mutual release, defendants argue that they never intended to release their counterclaims against Bosley. According to defendants, because Kabat and Bolton never discussed the specific claims that would be affected by the parties' mutual releases, it was error for the district court to hold that the parties effected a mutual release of all claims by all parties. Bolton acknowledged in his testimony that, though not his intent at the time, a "reasonable" interpretation of a "mutual release" term includes a release of all claims by all parties, including counterclaims by a defendant.

At its core, defendants' argument as to both of these matters rests on a single assumption: because the district court's factual findings conflict with Bolton's undisclosed and subjective understanding of the terms of the agreement negotiated with Kabat, the district court clearly erred. Thus, under the approach advocated by defendants, the district court erred not because the terms of the agreement found by the court lack evidentiary support but rather because the district court did not view the evidence through the lens of defendants' counsel.

Defendants' position is untenable. The fact that the defendants are now unhappy with the bargain they made is insufficient to support a finding of clear error. There is nothing in the evidentiary record that would suggest that Bolton's position on these issues was communicated to Kabat during the settlement negotiations, constructively or otherwise. Defendants' efforts to avoid their bargain on the theory that Kabat's failure to delve into Bolton's internal state of mind excuses their performance

10

are unavailing. The district court did not err in its findings regarding the terms of the parties' agreement.

Finally, defendants argue that the district court erred in enforcing the settlement agreement because Kabat failed to disclose Bosley's intentions to publish the fact of the settlement in a television appearance. According to the defendants, Kabat's failure to disclose Bosley's intention to appear on the Oprah Winfrey Show and make statements about the settlement of her case even though Kabat knew of the defendants' desire for confidentiality constituted fraud. Defendants' argument is meritless. As noted above, Kabat made clear to Bolton that plaintiffs were willing to keep *only* the *amount* of the settlement confidential. Bolton did not pursue the matter further, and the mere fact that Kabat did not disclose Bosley's plans to publicize the settlement is immaterial. Defendants were well aware of the plaintiffs' position on confidentiality. They had every opportunity to negotiate a broader confidentiality provision yet elected not to do so. The mere fact that defendants would have preferred to know about Bosley's intentions hardly suffices to establish that Kabat had a duty to disclose this information, much less suffices to make out a claim of fraud.

Upon review of the entire record, there can be little doubt that the district court correctly found the existence of an enforceable settlement agreement. The district court also committed no error in resolving the parties' dispute over the terms of that agreement. On this record and in the absence of any showing by the defendants that the district court committed error, we see no abuse of discretion in the district court's decision to enforce the parties' agreement.

IV.

We next address the claim by Nicks and 21 WFMJ that the district court erred in denying their two joint motions for recusal.

11

A.

This court reviews a district court's denial of a motion to recuse for an abuse of discretion.

*Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989); *see also Bell v. Johnson*, 404 F.3d

997, 1004 (6th Cir. 2005). The *Wheeler* court observed,

> The law with regard to recusal under section 455 is straightforward and
> well-established in the Sixth Circuit. A district judge is required to recuse himself
> only if a reasonable person with knowledge of all the facts would conclude that the
> judge's impartiality might reasonably be questioned. This standard is objective and
> is not based on the subjective view of a party.

*Id.* (internal citations and quotation marks omitted). Moreover, "[i]n order to justify recusal under 28

U.S.C. § 455, the judge's prejudice or bias must be personal or extrajudicial. Personal bias is prejudice

that emanates from some source other than participation in the proceedings or prior contact with

related cases." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (internal citation and

quotations marks omitted); *see also Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003). However,

even bias that is not "extrajudicial" may be so "extreme as to display clear inability to render fair

judgment," requiring recusal of a judicial officer. *Liteky v. United States*, 510 U.S. 540, 551 (1994).

B.

Defendants first argue that the district court should have recused itself because of its prior

involvement in a related case, *Bosley v. Wildwett.com*.[1] According to the defendants, Judge Gwin was

responsible for helping facilitate the agreement that resulted in the settlement of that case. As part of

---

[1]In addition to its ruling on the merits, the district court determined that the defendants failed
to file their second motion within a reasonable time after they learned of the grounds for recusal.
Judge Gwin's observations about defendants' delay in bringing this ground for recusal to the court's
attention only bolster his decision not to grant defendants' second motion. Defendants dispute the
point at which they became aware of Judge Gwin's involvement in the prior action. However,
because defendants' argument on appeal as to the merits is not well taken, there is no need to resolve
the matter.

that settlement and in exchange for a reduced cash payment, Bosley received any copyright in the video that gave rise to this litigation held by DreamGirls, Inc.–one of the defendants.[2] Defendants further contend that it was Judge Gwin who first suggested the possibility of this transfer to the parties. Because Judge Gwin was involved in the prior settlement, defendants argue, he has an "implied commitment to vindicat[e] Bosley's exploitation of the purported copyright in this case." Moreover, according to defendants, "[t]hat implied stake ranges from sustaining Bosley's ability to sue on the copyright, to ensuring a favorable climate for settlement, making up for the cash shortfall [resulting from the prior settlement]."

The record provides no basis for defendants' claim of bias. Other than their own speculation, defendants offer no support for their claim that Judge Gwin had such an implied obligation. They point to nothing in the record that would suggest Judge Gwin had somehow become invested in Bosley's lawsuit against them. In the absence of any evidence to suggest that Judge Gwin was incapable of impartially adjudicating the case before him, the mere fact that the defendants believe that Judge Gwin has some interest in seeing Bosley's action succeed does nothing to advance their argument that Judge Gwin erred in refusing to recuse himself.

As before the district court, defendants have identified only two cases that involve a factual scenario that is even remotely similar to the one before us. In each case, the district court *voluntarily* recused itself after determining that its prior involvement with settlement negotiations warranted exercising caution. *Black v. Kendig*, 227 F. Supp. 2d 153, 155-56 (D.D.C. 2002) (magistrate judge recused himself from dispute over terms of settlement where he had supervised settlement negotiations); *Day v. NLO*, 864 F. Supp. 40, 43 (S.D. Ohio 1994) (disagreeing with the idea that a

---

[2]It is this copyright that Bosley sought to vindicate in the instant suit.

"trial judge who has participated in settlement negotiations is necessarily incapable of reviewing that settlement" but recusing himself from Rule 23(e) fairness proceeding "out of an abundance of caution"). These cases, while in some ways similar, implicate somewhat different concerns. In each case, the judges' decisions to recuse were motived by concern over their ability to remain impartial in reviewing settlements in which they played a part in crafting. Whatever this authority may have to say about situations where voluntary recusal would be prudent, it offers little guidance as to the propriety of Judge Gwin's decision not to recuse in this particular case. Offering little more than conjecture, defendants conclude that no reasonable person could but doubt Judge Gwin's impartiality. Neither case law[3] nor common sense supports defendants' position, and Judge Gwin did not abuse his discretion in declining to recuse.

Defendants offer a second and independent ground in support of their claim that the district court should have recused. They claim that certain comments made by Magistrate Judge Limbert prior to the evidentiary hearing on plaintiffs' motion to enforce settlement demonstrated that the district court was incapable of rendering an impartial decision. According to defendants' declarations filed with the district court, Judge Limbert disclosed to the parties that Judge Gwin had instructed him to find that the parties had agreed to settle their dispute under certain terms and that the evidentiary hearing requested by defendants would be of little consequence. Moreover, defendants stated that

---

[3]In their briefing, defendants also draw on general principles of fairness that demand a judge be recused where he or she is called upon to review independently his or her own judicial rulings. They argue that this principal applies with equal force to the facts of this case. The cases cited by defendants have no bearing on this case. Judge Gwin made no determination in the prior lawsuit as to the validity of any copyright held by Bosley; he simply helped to mediate and approved of a settlement whereby one of the defendants in Bosley's first lawsuit "agreed to assign to [her] whatever copyright it had, without warranty, in video of Bosley." Thus, defendants' contention that the instant suit required Judge Gwin to review the propriety of his prior ruling is incorrect, and the cases upon which they rely in this regard are inapposite.

Judge Limbert informed them that Judge Gwin would not set the matter for trial or otherwise disturb his prior dismissal order because he had determined that the parties' dispute was settled.

The crux of defendants' argument is that these statements demonstrate that Judge Gwin held such deep-seated predisposition as to the proper outcome of the parties' dispute as to render impossible any fair judgment. *See, e.g., Liteky*, 510 U.S. at 551; *United States v. Howard*, 218 F.3d 556, 566 (6th Cir. 2000) ("A predisposition acquired by a judge during the course of the proceedings will only constitute impermissible bias when 'it is so extreme as to display clear inability to render fair judgment.'") (quoting *id.*). Were the facts of this particular case confined to those outlined in defendants' declarations, their argument might have more traction.

However, given defendants' allegations that Judge Limbert's comments called into question the possibility of a fair resolution of the settlement issue, it is perplexing that they waited nearly six weeks before first drawing the court's attention to Judge Limbert's statements and almost two months before filing their recusal motion.[4] Defendants claim that, following Judge Limbert's disclosure, they had every reason to believe that the outcome of plaintiffs' motion to enforce settlement was predetermined and that they could not possibly receive a fair hearing. Although defendants claim that by all appearances, the result was foreordained, their concerns did not motivate them to question the impartiality of the court for nearly two months–almost one month after Judge Limbert issued his report and recommendation. While not dispositive, the delay in filing undercuts defendants' claims significantly. *See In re City of Detroit*, 828 F.2d 1160, 1167-68 (6th Cir. 1987) ("Timeliness is a factor

---

[4]According to defendants, Judge Limbert conveyed this information on January 30, 2006. The first reference to Judge Limbert's alleged revelation appears in defendants' declarations filed in support of a motion to supplement the record filed on March 13, 2006, and their motion for recusal was not filed until March 27, 2006.

that obviously merits consideration by a court that is trying to determine whether a judge is truly biased or a litigant is merely trying to avoid an . . . adverse decision."), *overruled in part on other grounds by In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1140-43 (6th Cir. 1990) (en banc).

Moreover, in his order denying defendants' recusal motion, Judge Gwin stated that he never instructed Judge Limbert to come to any specific resolution of the case. To the contrary, Judge Gwin stated,

> [i]n referring the matter, the Court did not direct Magistrate Limbert to reach any particular decision. This Court has no authority to tell any judicial officer to make any decision. Having read the parties submissions before referring the motion, the Court no doubt indicated [what was] apparent–Defendants had an obviously weak argument. Repeating, at the time of the referral, Defendant's only argument recognized the parties had reached settlement on major terms but claimed it could avoid settlement over some undiscussed and unreserved term.

In addition, as Judge Gwin observed, the Supreme Court has recognized that judges may properly form opinions "on the basis of facts introduced or events occurring in the course of the current proceedings . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.[5]

Also undercutting defendants' claim of judicial bias is the thoughtful and thorough analysis that has been conducted at each stage of this litigation. The magistrate judge thoroughly analyzed the factual record before him and found corroboration for his ruling in the testimony of counsel for both parties. The district court, though under no obligation to review defendants' untimely objections,

---

[5]Defendants argue that even though Judge Gwin disclaimed any prejudgment, it was not until after the issue of Judge Limbert's statements was raised that Judge Gwin did so. Thus, defendants argue, the *appearance* of prejudgment endured for a period of weeks. The period of apparent bias is attributable solely to defendants' own conduct in delaying their filing of a recusal motion or otherwise notifying the court of Judge Limbert's statements. Defendants may not now rely on their own dilatory behavior in support of their claim of bias.

thoughtfully and thoroughly reviewed the report and recommendation and explained why defendants' position should be rejected. The record before us does not support defendants' claim that they were denied a fair and impartial hearing. Accordingly, we find no abuse of discretion in the district court's denial of defendants' recusal motion.

## V.

The remaining issues presented on appeal involve defendants' challenge to the district court's rulings on the parties' cross motions for summary judgment. Having determined that the district court committed no error in finding that the parties settled their dispute and effected a mutual release of all claims, any dispute as to the district court's prior rulings on the merits of the their claims have been rendered moot. We therefore need not reach the merits of the district court's disposition of the parties' summary judgment motions.

## VI.

For the foregoing reasons, we (1) affirm the district court's order enforcing the parties' oral settlement agreement in accordance with the terms specified in that order; (2) affirm the district court's denial of the motions for recusal; and (3) dismiss the remainder of the appeal as moot.